[No. B172918. Second Dist., Div. One. Dec. 23, 2004.]

ROBERT FIEGE, Plaintiff and Appellant, v.
NORMAN COOKE et al., Defendants, Cross-complainants and
Respondents;
MICHAEL ALAN WOOLDRIDGE, Cross-defendant and Respondent.
MICHAEL ALAN WOOLDRIDGE, Plaintiff, v.
NORMAN COOKE et al., Defendants.

*Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1352

**COUNSEL**

Fensten Gelber Reyna Martinez, Bruce Gelber and Andrew Taylor for Plaintiff and Appellant.

Law Offices of John Gardner Hayes, John Gardner Hayes; Law Office of Barry M. Wolf and Barry M. Wolf for Defendants, Cross-complainants, and Respondents.

Crandall, Wade & Lowe and Bruce M. Butler for Cross-defendant and Respondent.

**OPINION**

**SUZUKAWA, J.**—Plaintiff alleged that the trial court erred in enforcing a settlement. He says the settlement was unenforceable as to three parties because they did not participate. We reject his claim and affirm the judgment.

### BACKGROUND

Plaintiff Robert Fiege sued several defendants, including individuals Norman Cooke and Robert Ellis, over a traffic accident. Michael Wooldridge, the driver of the car in which Fiege was a passenger, also sued Cooke and Ellis. After a complaint in intervention by one of the insurance companies, a consolidation, and a cross-complaint by Cooke and Ellis, the matter went to a mandatory settlement conference. By this time, Fiege was on one side;

Cooke, Ellis and Wooldridge (referred to as "the defendants" for sake of convenience) were on the other, in that Fiege was seeking compensation from all three.

The defendants were all insured under policies that gave the insurers the right to settle without the defendants' consent and to bind the defendants to the settlement. One insurer agreed to settle for $135,000 (including payment on two liens) on behalf of Cooke and Ellis. The other agreed to pay $25,000 on behalf of Wooldridge. The trial court secured Fiege's oral consent to the settlement. The defendants were not present at the settlement conference nor did they stipulate in writing to the settlement.

Fiege later sought to escape from the settlement. In response, the defendants successfully moved under Code of Civil Procedure section 664.6[1] to enforce the settlement. The trial court entered a judgment consistent with the settlement terms.

## DISCUSSION

Section 664.6 provides, in part, that "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

In *Levy v. Superior Court* (1995) 10 Cal.4th 578, 586 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*), the California Supreme Court held "that the term 'parties' as used in section 664.6 . . . means the litigants themselves, and does not include their attorneys of record." (Fn. omitted.) The court declared unenforceable a settlement because a party litigant had not signed off on the agreement.

At first blush, *Levy* would appear to make the Fiege settlement unenforceable, since the defendants did not agree to it either in writing or orally before the court. However, in dicta we find persuasive, our colleagues in Division Two distinguished the *Levy* situation from one, such as ours, where insurers fully cover the settlement under a policy that gives them the right to settle without the insureds' consent. Accordingly, we quote extensively from *Robertson v. Chen* (1996) 44 Cal.App.4th 1290, 1293–1296 [52 Cal.Rptr.2d 264], and so resolve our matter:

"The *Levy* court determined that the term 'parties' as used in section 664.6 means literally the litigating parties and does not include the attorneys.

---

[1] All statutory references are to the Code of Civil Procedure.

*Levy, supra,* 10 Cal.4th at page 585, was based on the proposition that the Legislature intended to require the litigants' 'direct participation' because this 'tends to ensure that the settlement is the result of their mature reflection and deliberate assent.' The *Levy* court reasoned that this 'protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle,' and that it 'protects parties from impairment of their substantial rights without their knowledge and consent.' (*Ibid.*) *Levy*'s clear concern was protecting parties from harm caused by either their own or their attorney's improvidence, or their attorney's unauthorized actions.

"*Levy,* however, was not a situation in which an insurance defense counsel or adjuster had consented to a settlement to be paid by a carrier on behalf of an insured. *Levy* instead involved a plaintiff's giving up its claim through settlement, as did many of the other cases construing section 664.6. (*Johnson v. Department of Corrections* [(1995)] 38 Cal.App.4th 1700, 1702–1703 [45 Cal.Rptr.2d 740] [plaintiff employee in lawsuit alleging racial discrimination not bound under section 664.6 to settlement in which he never personally agreed orally or in writing]; *Scruton v. Korean Air Lines Co.* (1995) 39 Cal.App.4th 1596, 1607 [46 Cal.Rptr.2d 638] [plaintiff, guardian ad litem for minors, did not agree to oral stipulation before the court, so settlement cannot be enforced under section 664.6]. See also *Murphy v. Padilla* (1996) 42 Cal.App.4th 707 [49 Cal.Rptr.2d 722] [defendant defending a suit to void an easement not bound under section 664.6 to an alleged oral agreement that was not made before the court].)

"When a defense is being provided without reservation by an insurance carrier, a settlement by the carrier within policy limits does not prejudice the 'substantial rights' of the insured. As the Supreme Court stated in *Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 919 [164 Cal.Rptr. 709, 610 P.2d 1038]: '. . . . where the insured is fully covered by primary insurance, the primary insurer is entitled to take control of the settlement negotiations and the insured is precluded from interfering therewith.' This has long been the law. (See, e.g., *Shapero v. Allstate Ins. Co.* (1971) 14 Cal.App.3d 433, 438 [92 Cal.Rptr. 244] [insured is precluded from interfering with settlement procedures] and *Ivy v. Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 660 [320 P.2d 140] [same]. See also *Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 870 [110 Cal.Rptr. 511] [carrier retains control over settlement] and *Brown v. Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 684 [319 P.2d 69] [absolute control over settlement vested in insurance carriers].) [Fn. omitted.] Not only are the insured's 'substantial rights' not prejudiced—as the cited cases show—but the consent of the insured is usually superfluous. The insured normally cannot either bind the insurer by the insured's own consent nor prevent settlement by withholding consent. '[L]iability policies

usually *specifically prohibit* the insured from settling or negotiating for a settlement or interfering in any manner with the defense except upon the request of the insurer unless the insurer is in breach of the contract. [Citation.] By accepting a liability insurance policy, the insured is bound by these terms.' (Croskey et al., Cal. Practice Guide: Insurance Litigation 3, *supra*, ¶ 12:207, p. 12B-2.) For this reason, it is common practice for insurance counsel and an adjuster to handle the negotiation of insurance-funded settlements without the superfluous involvement of a fully protected insured.

"If *Levy* were nevertheless interpreted to require the superfluous signature of an insured to an insurance-funded settlement in order for section 664.6 to apply, it is predictable that the insured would henceforth be ordered to attend all [mandatory settlement conferences]. Present practice often allows an insured to avoid such expense and inconvenience by permitting counsel and the adjuster to appear. Indeed, many people regard the ability to let the insurance carrier handle insured incidents without inconvenience to the insured as one of the benefits gained by purchasing insurance.

■ "The *Levy* court was not faced with an insured situation in which a literal party-signature requirement would more likely impair the insured's interests than protect them. Since *Levy* did not involve an insurance-funded settlement, we do not read *Levy* as precluding enforcement pursuant to section 664.6 of an insurance-funded settlement reached by an authorized insurance defense counsel or adjuster when the carrier has the contractual right to settle. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] ['an opinion is not authority for a proposition not therein considered']; accord, *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1268 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) [Fn. omitted.] It seems unlikely that the *Levy* court would find a party-signature requirement intended by the Legislature when the presence of such a signature could not create a settlement and the absence of such a signature could not prevent a settlement. (Cf. Civ. Code, § 3532 ['The law neither does nor requires idle acts.'].)" [End of quotation from *Robertson v. Chen, supra,* 44 Cal.App.4th at pp. 1293–1296.]

Fiege asks us not to follow *Robertson's* dicta. However, as noted above, we find it persuasive.

■ Fiege argues even if *Robertson* is good law, the settlement is unenforceable because the record fails to reveal that the insurers' representatives (as opposed to their counsel) agreed to the settlement. We find their presence while their counsel pledged to pay $160,000 persuasive evidence that they agreed to the settlement "orally before the court" during the settlement conference. After the court put the terms on the record, it asked, "All right, is

there anybody that disagrees or has any addendums to the court's stated settlement?" The insurer's representatives did not object. It does not matter that the insurers' assent was not "on the record," i.e., in the reporter's transcript. Section 664.6 used to contain the requirement that an oral settlement must be "orally *on the record* before the court." The *on the record* requirement was removed via 1994 legislation. (*Murphy v. Padilla, supra*, 42 Cal.App.4th 707, 711–712, fn. 2 [49 Cal.Rptr.2d 722].) A reading of the "reporter's transcript of settlement" makes it plain that the insurers' representatives and counsel had discussions with the court before going on the record with counsel stating their appearances and relating the terms of the settlement. No more was necessary.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

Spencer, P. J., and Mallano, J., concurred.