[No. B184526. Second Dist., Div. Eight. Sept. 12, 2006.]

ISRAEL ELNEKAVE et al., Plaintiffs and Appellants, v.
VIA DOLCE HOMEOWNERS ASSOCIATION, Defendant and Appellant.

1194

COUNSEL

Pariser & Pariser and Wayne D. Pariser for Plaintiffs and Appellants.

Procter, McCarthy & Slaughter, Barry J. Reagan, Chandra A. Beaton and Gabriele Mezger-Lashly for Defendant and Appellant.

OPINION

**RUBIN, J.**—Defendant Via Dolce Homeowners Association appeals from the judgment entered to enforce a settlement agreement with plaintiffs Israel and

Sara Elnekave (Code Civ. Proc., § 664.6) in this action for water and mold damage to the Elnekaves' condominium. Because only the association's insurer and a third party representative agreed to the settlement, and not a member of its corporate board or a corporate officer, we reverse. The Elnekaves have cross-appealed, asking that if we reverse the judgment, we also reverse the concomitant order dismissing their complaint. We also reverse the dismissal order, and the Elnekaves' action is restored.

## FACTS AND PROCEDURAL HISTORY

Israel and Sara Elnekave owned a unit in a Marina Del Rey condominium complex. Their unit suffered mold damage from a water leak, forcing them to pay for extensive repairs. The Elnekaves sued the Lees, their neighbors who owned an adjoining unit, and Via Dolce Homeowners Association (HOA), the homeowners association for the condominium complex, claiming that the Lees and the HOA were responsible for the damage.[1]

At a September 8, 2004, mandatory settlement conference, it appeared that an oral settlement was reached and put on the record before the court. Attorneys for each of the parties were present, but Israel Elnekave was the only party to attend, purporting to consent for himself and on behalf of his wife. Settling on behalf of the HOA was a representative from its insurer—State Farm—and Cheryl Stites, an employee of a property management company hired by the HOA to manage the condominium complex. Stites told the court she had authority to settle for the HOA. The Lees were also insured by State Farm, and the State Farm representative appearing for the HOA said he was able to agree to the settlement on their behalf.

The agreement, as described by the court, called for State Farm to pay the Elnekaves $65,000 on behalf of the HOA and $60,000 on behalf of the Lees. The action would be dismissed and mutual releases would be exchanged. The Elnekaves believed the HOA had been harassing them about the repair work, threatening to inspect the repairs and perhaps find violations of building codes or the condominium's covenants, codes and restrictions (CC&R's). According to the court, the settlement meant "that's the end of the lawsuits, that's the end of demanding damages or monetary fines and so forth in regard

---

[1] The complaint is not in the record. Our description of the complaint and the underlying dispute is based on statements in the parties' appellate briefs.

to the mold problem and the construction that was done to repair the apartment because of the mold damage. It has nothing to do with any other lawsuits not dealing with the apartment and the mold problem. It has nothing to do with anything in future construction or change of the apartment or anything along that line. It encapsulates this particular issue with the mold, the displacement of the plaintiff and the repair to his condominium . . . ." Israel Elnekave told the court, "I just want to reiterate that I don't want to be harassed anymore in any way, shape or form with this work. Everything is over. I don't want to be harassed anymore." The court replied, "That's part of the settlement agreement, sir."

Later attempts to reduce the oral agreement to writing foundered when counsel for the HOA and the Elnekaves could not agree on the scope of the release regarding enforcement of the CC&R's for any problems with the Elnekaves' repair work. Even though the draft prepared by the HOA appeared to release any HOA enforcement actions *by the HOA* for work done up to the date of the settlement conference, the Elnekaves wanted the agreement to make clear that the HOA would not pursue any CC&R enforcement actions on behalf of owners of other units in the complex. The Elnekaves brought a motion to enforce the settlement pursuant to Code of Civil Procedure section 664.6.[2] The HOA opposed the motion on two main grounds: First, it never intended to waive its right to enforcement actions based on a steam shower the Elnekaves added in place of their old shower; and second, Stites was merely an employee of an outside property management firm, and, despite her self-asserted authority to settle, could not agree to settle in place of a member of the HOA's board of directors. In the Elnekaves' reply brief, they argued that Stites had the actual authority to settle. Even if she did not, State Farm's consent to the settlement was sufficient to bind the HOA, they contended.[3] The trial court denied the motion because the settlement was never intended to apply to the steam shower, but, out of fairness to the Lees, who were ready and willing to settle the matter, ordered the HOA and the Elnekaves to work out their differences. An order to show cause regarding dismissal of the action as part of an eventual settlement was continued to February 3, 2005.

---

[2] All further section references are to the Code of Civil Procedure.

[3] As part of the Elnekaves' reply brief, Sara Elnekave submitted a signed declaration where she expressly adopted and consented to the settlement. We express no opinion on the legal effect of this declaration in future proceedings, except to observe that for section 664.6 purposes one spouse's signature or acquiescence may be insufficient to bind the other spouse. (See *Cortez v. Kenneally* (1996) 44 Cal.App.4th 523, 530 [51 Cal.Rptr.2d 671].)

The order to show cause regarding dismissal was eventually heard on April 1, 2005. Present on behalf of the HOA this time was a member of its board of directors, along with Stites. At the start of the hearing, the court said it had just held an in-chambers conference with the parties where it issued a tentative ruling to adopt the September 2004 settlement. Counsel for the HOA argued that it had been trying for some time to determine whether the repair work performed by the Elnekaves, including the steam shower, had been performed by licensed contractors and met local building code standards, as required by the CC&R's. The HOA lawyer said the Elnekaves' unit had flooded twice, once as recently as January 2005. One leak was caused by unapproved construction work, the lawyer said. According to the HOA's lawyer, the HOA and Stites had been unaware of all the work done by the Elnekaves and never intended to waive enforcement of the CC&R's as to any and all work, just as to the mold remediation repairs. The Elnekaves' lawyer told the court that the purpose of the settlement was to put an end to the entire dispute, including the HOA's threats of enforcement actions, and said that the HOA had twice inspected the Elnekaves' unit.

The trial court resolved the dispute by finding that a "good faith settlement" was reached on September 8, 2004, with the HOA waiving enforcement actions for work done in the Elnekaves' unit up to that date, excluding the steam shower, and matters that the Elnekaves intentionally misrepresented or failed to disclose to the HOA. The court entered an order to that effect, finding that the settlement was in good faith pursuant to section 877.6. It also ordered that the case be dismissed.

On appeal, the HOA contends: (1) the trial court purported to act under section 877.6, which provides for findings that a settlement was in good faith for purposes of settlements with one of several joint tortfeasors or co-obligors. No such motion was made, and that statute was inapplicable here, leading the HOA to conclude that the trial court lacked jurisdiction to enforce the settlement; (2) because Sara Elnekave was not present, and because Stites was not a proper representative of the HOA corporate entity, not all parties were present when the settlement was reached, making it unenforceable under section 664.6; and (3) the parties did not agree as to all material terms.

## STANDARD OF REVIEW

In a statutory settlement proceeding, we review the trial court's determination of factual matters for substantial evidence. To the extent we engage in the proper interpretation of section 664.6, however, we exercise our independent review. (*Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1116 [127 Cal.Rptr.2d 370] (*Gauss*).)

## DISCUSSION

Section 664.6 provides, in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." The term "parties to the litigation" has been strictly construed to mean the parties themselves, not their lawyers or other agents. (See *Gauss*, *supra*, 103 Cal.App.4th at pp. 1117–1119, and cases cited therein.) The reason for this rule was stated in *Levy v. Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*): "The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. . . . It also protects parties from impairment of their substantial rights without their knowledge and consent." (*Id.* at p. 585, fn. and citations omitted.)

In *Gauss*, *supra*, 103 Cal.App.4th 1110, the defendant and other corporations expressly authorized another corporation (the agency) to handle the defense of, and settle, claims by asbestosis plaintiffs. That agency settled an action against GAF, but GAF refused to pay when a dispute arose over its settlement obligations. The trial court eventually granted the plaintiff's section 664.6 motion, but GAF appealed, contending it alone had the authority to settle for purposes of such a motion. The appellate court agreed, holding that despite GAF's express authorization of the agency's right to settle, section 664.6 required an agreement by a corporate officer. Citing to *Levy*, *supra*, 10 Cal.4th at page 583, the *Gauss* court noted that the term "party" in section 664.6 means the specific person or entity by or against whom an action was brought. (*Gauss*, *supra*, at pp. 1118–1119.)

Relying on *Gauss,* the HOA contends in its opening brief, as it did below, that Stites was not its proper representative under section 664.6 because she was no more than an employee of a property management company hired by the HOA. The Elnekaves' brief does not address this issue at all, and we therefore deem it waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119] (*Landry*).) Instead, the Elnekaves rely on the alternative ground they raised below—that the representative of HOA's insurer sufficed to bind the HOA under section 664.6. The only authority cited for this proposition is *Fiege v. Cooke* (2004) 125 Cal.App.4th 1350 [23 Cal.Rptr.3d 496] (*Fiege*).

The plaintiff, Fiege, was injured in an automobile collision and sued three persons for his injuries. Fiege accepted settlement offers from the defendants' insurers, but later tried to avoid the settlement. The defendants sought and were granted a motion to enforce the settlement under section 664.6. Fiege contended on appeal that the defendants themselves had to be present and consent to make the settlement enforceable under section 664.6, and that an agreement by their insurers was not sufficient. The appellate court disagreed. Because the defendants' insurance policies expressly gave the insurers the right to settle without the defendants' consent, and because the settlement within policy limits did not prejudice the defendants' substantial rights, the court held that section 664.6 had been satisfied. (*Fiege, supra,* 125 Cal.App.4th at pp. 1354–1355.)

As the HOA points out, its liability policy is not in the record and there is no evidence that it gave State Farm the right to settle without the HOA's consent. Also, unlike *Fiege,* the settlement here did prejudice the HOA's rights separate from the payment by its insurer, because the settlement limited its ability to enforce the CC&R's for noncompliance by the Elnekaves. Therefore, *Fiege* is not applicable. We alternatively hold that the Elnekaves have waived this issue by failing to discuss the facts or holding of *Fiege* or to analyze that holding in light of the appellate record. (*Landry, supra,* 39 Cal.App.4th at pp. 699–700.)[4]

---

[4] Because we hold that the settlement was unenforceable on this ground, we need not reach the other issues raised by the parties. We also make clear that our decision in no way affects the Elnekaves' ability to enforce the settlement by alternative means, such as a summary judgment motion, separate suit in equity, or amendment to the complaint. (*Gauss, supra,* 103

The Elnekaves contend that the monetary portion of the settlement, calling for the payment of money by the HOA's insurer, is separately enforceable under *Fiege, supra*, 125 Cal.App.4th 1350. We disagree. Under this contention, we would be peeling off one portion of the settlement, leaving the fate of the other—the enforceability of the CC&R's—in limbo. Nothing in *Fiege* suggests that part of what was intended as a global settlement may be enforced under section 664.6, and we decline to adopt such a rule.[5]

Finally, the Elnekaves contend that the HOA waived its objections concerning HOA's failure to have a proper representative at the September 2004 settlement conference by not raising the issue at the April 2005 hearing on the order to show cause, or in response to the trial court's proposed order enforcing the settlement. We reject that contention for two reasons. First, the HOA raised the issue as to Stites in its opposition to the original section 664.6 motion, and the Elnekaves raised the issue of the insurer's presence in their reply brief, meaning that these issues were before the court. Second, the waiver rule is designed to allow the trial court the opportunity to correct an error before ruling. (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755 [2 Cal.Rptr.3d 38].) Because the defect—the failure to have a proper representative of the HOA present—took place seven months earlier and could not have been remedied at a later time, the waiver rule is inapplicable.

Because we hold that the settlement was unenforceable under section 664.6 and reverse the judgment, we also grant the Elnekaves' cross-appeal and reverse the order dismissing their complaint.

---

Cal.App.4th at p. 1122.) Our decision should also not be construed one way or the other as affecting the merits of any arguments the Elnekaves may raise concerning principles of agency, be they actual, ostensible, or apparent, as among State Farm, Stites, and the HOA.

We also share the undoubted frustration of the trial court with this case being remanded for further proceedings. This settlement was reached following a mandatory settlement conference. California Rules of Court, rule 222 requires that persons with full authority to settle must personally attend the settlement conference, as must anyone else whose "consent" is necessary. Failure to comply with rule 222 may result in the imposition of sanctions under rule 227. (*Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 71, fn. 7 [35 Cal.Rptr.2d 520]; *Sigala v. Anaheim City School Dist.* (1993) 15 Cal.App.4th 661, 674 [19 Cal.Rptr.2d 38].) At oral argument, counsel for the HOA asserted that neither Stites nor the State Farm adjuster had authority to settle at the mandatory settlement conference. Our remand does not preclude the trial judge from consideration of sanctions against the HOA. We express no opinion on whether attorneys fees, including those incurred by the Elnekaves on appeal, are an appropriate component of any sanction award.

[5] Of course, section 664.6 does allow for partial settlements, but that was not the intent of the parties in this case.

## DISPOSITION

For the reasons set forth above, the judgment enforcing the purported settlement of September 8, 2004, pursuant to section 664.6 is reversed, as is the trial court's order dismissing the Elnekaves' complaint. Each party to bear its own costs on appeal.

Cooper, P. J., and Boland, J., concurred.

A petition for a rehearing was denied October 4, 2006.